**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 2:26-194** |
| **MIKHAIL TSURIKOV** | : | |

# GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Mikhail Tsurikov was the Second Engineer on the Motor Vessel MSC Samira III. An engineer with over twenty years of experience, he discharged oil into the ocean and lied about it in the vessel's legally required oil record book. He ordered subordinate crew members to assist him in conducting these discharges. And he did these things with the knowledge that they violated laws established by the international community, including the United States, to protect the marine environment. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 6 to 12 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the

*continued . . .*

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. BACKGROUND

On May 20, 2026, the defendant pled guilty to causing the failure to maintain an accurate Oil Record Book, in violation of 33 U.S.C. § 1908(a). During his plea colloquy, the defendant admitted that, as a person in charge of operations for which entries are required to be made in an Oil Record Book, he knowingly and willfully failed or caused the failure to record in the Oil Record Book the flushing of the Oil Content Monitor with water during the operation of the Oil Water Separator and the subsequent discharge of oily waste from a 27,114 gross ton ship into the

---

Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

sea. The defendant further admitted to willfully causing the Master of the ship to present the Oil Record Book, containing the false entries, to the U.S. Coast Guard in Philadelphia, Pennsylvania on January 27, 2025.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is a term of imprisonment of six years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100. PSIR ¶¶ 70, 78, 79.

### B. Sentencing Guidelines Calculation.

The defendant's base offense level is 6 under USSG § 2Q1.3(a) for causing the Failure to Maintain an Accurate Oil Record Book. PSIR ¶ 32.

Pursuant to USSG § 2Q1.3(b)(1)(B), a 4-level increase should be applied because the offense otherwise involved a discharge of a pollutant. PSIR ¶ 33.

The offense level is then increased by 2 pursuant to USSG §3B1.1(c), due to defendant Tsurikov's role in the offense as an organizer, leader, manager, or supervisor. PSIR ¶ 35.

USSG §3E1.1(a) provides for a reduction of 2 levels for the defendant's acceptance of responsibility, resulting in a total offense level of 10. PSIR ¶ 40.

The Probation Office correctly calculates the defendant's criminal history score of zero which yields a criminal history category of I. PSIR ¶ 44.

The guideline range based on a total offense level of 10 and a criminal history category of I is 6 to 12 months in prison. PSIR ¶ 71.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A. <u>Consideration of the 3553(a) Factors Regarding Imprisonment</u>.

#### 1. The Nature and Circumstances of the Offense and History and Characteristics of the Defendant

On at least three occasions between November 2024 and January 2025, defendant Tsurikov ordered subordinate crew members to set up equipment that would enable him to bypass the ship's pollution prevention control device by flushing it with clean water while discharging oily waste into the sea. Defendant Tsurikov is an experienced mariner. He has a college degree in marine engineering from the Admiral Nevelskoy Maritime State University in Vladivostok, Russia. PSIR ¶ 61. He is 47 years old and has worked as an engineer on vessels for approximately 20 years. PSIR ¶ 65. He has worked as a second engineer for his current employer, MSC Shipmanagement LTD, since 2022. *Id.* Tsurikov served on the M/V MSC Samira III from on or about October 27, 2024, until on or about January 27, 2025. PSIR ¶ 19. Accordingly, he was aware of the laws and regulations applicable to waste disposal from sea-going vessels and chose to disregard them. He also had influence over lower-level crew members, who generally do not have the ability to say no to an order from a superior officer, and involved them in his illegal activity. In doing so, he exposed his subordinates to potential criminal liability.

#### 2. The Need for the Sentence to Deter, Protect, and Provide Just Punishment

There is a strong need to impose a sentence that reflects the seriousness of the defendant's offense, promotes respect for U.S. laws, and provides just punishment. Intentional dumping is responsible for far more sludge and oil entering the world's oceans than well-known

accidents such as the Deepwater Horizon and Exxon Valdez.[2] This dumping can have catastrophic effects on the marine ecosystem. "Marine mammal and bird species, which must regularly pass through the air-water interface to breathe, are particularly vulnerable to oil exposure."[3] Effects of oil on ocean life "may include ingestion of oil, accumulation of contaminants in tissues, DNA damage, impacts to immune functioning, cardiac dysfunction, mass mortality of eggs and larvae, e.g., in fish, loss of buoyancy and insulation for birds, and inhalation of vapors."[4] Exposure to oil correlates to "strong and long-lasting population declines" in amphipod species, an important part of the marine food chain.[5] Likewise, "[f]loating oil can contaminate plankton," on which many fish and marine mammals directly or indirectly rely.[6]

Combatting ocean pollution is a collective action problem that requires the cooperation of many nations, including the United States, to succeed. The International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 ("MARPOL"), has been the international community's solution to this problem, implemented in the United States through the Act to Prevent Pollution from Ships (APPS). The United States is a leader in compliance with and enforcement of MARPOL. Because many discharges occur outside the territorial seas of the United States, recordkeeping requirements and inspections are not mere

---

[2] *See also* Ian Urbina, "*Stowaways and Crimes Aboard a Scofflaw Ship*," The New York Times, July 17, 2015 ("Ships intentionally dump more engine oil and sludge into the oceans in the span of three years than that spilled in the Deepwater Horizon and Exxon Valdez accidents combined.").

[3] S.E. Chang et al., "Consequences of oil spills: a review and framework for informing planning," Ecology and Society, Vol. 19, No. 2 (2014). *Available at* https://ecologyandsociety.org/vol19/iss2/art26/

[4] *Id.*

[5] *Id.*

[6] *See* U.S. Fish & Wildlife Service, "*Effects of Oil on Wildlife and Habitat*," (June 2010).

formalities; rather, they are critical to enforcing this important international treaty. When marine engineers like defendant Tsurikov dump oil into the ocean and attempt to subvert MARPOL and APPS, it seriously undermines the effectiveness of the federal and international ocean pollution prevention regimes.

### 3. Sentences of Incarceration in Other Vessel Pollution Cases

Another factor to be considered under 3553(a) is the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). In this case, a sentence within the guideline range is justified, particularly in light of the defendant's role as a manager or supervisor of others who recruited those subordinates to participate in illegal activity.

In identifying factors that may warrant a sentence outside of the Guidelines range, the Presentence Investigation Report notes that "the defendant has been held in the United States for over a year and half, which is longer than the advisory guideline imprisonment range in this case." PSIR ¶ 86. However, the government notes that during that time, Mr. Tsurikov has been housed, at the expense of his employer, in a local hotel. He has received full salary and per diem, and has been free to come and go as he pleases. Under 18 U.S.C. § 3585(b), a defendant shall be given "Credit for Prior Custody" for time spent in "official detention" prior to the date his sentence begins. The Supreme Court has clarified that "the phrase 'official detention'. . . refers to a court order detaining a defendant and committing him to the custody of the Attorney General for confinement." *Reno v. Koray*, 515 U.S. 50, 56 (1995). The Court specifically distinguished the imposition of restrictive conditions from imprisonment and noted that "credit for time spent in 'official detention' under § 3585(b) is available only to those defendants who were detained in a 'penal or correctional facility,' . . . and who were subjects to [the Bureau of Prisons'] control." *Id.* at 59-61 (internal citations omitted).

The defendant's housing situation is not uncommon for witnesses and defendants in vessel pollution cases, who must remain in the United States after the ship they arrived on leaves port at the request of their employer. Defendants in prior vessel pollution cases have received sentences of incarceration notwithstanding the time spent in the United States during the pendency of the investigation and prosecution. The Government has included, as Attachment 1, a list identifying 29 vessel pollution cases from recent years in which a defendant received a sentence of incarceration despite time spent in the United States prior to their sentencing.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. Supervised Release**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, USSG § 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception

of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, supervised release is not warranted since the defendant will be deported to his country of citizenship, Russia, following any custodial sentence for this case and is not expected to return to the United States.

**IV. CONCLUSION**

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a guideline sentence is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*<u>/s Angella N. Middleton</u>*
ANGELLA MIDDLETON
Assistant United States Attorney

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*<u>/s Lauren D. Steele</u>*
LAUREN D. STEELE
Trial Attorney
Energy and Natural Resources Division

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Michael Twersky, Esq.
MTwersky@foxrothschild.com
*Counsel for Mikhail Tsurikov*

*/s Angella N. Middleton*
ANGELLA MIDDLETON
Assistant United States Attorney

DATED: September 2, 2026